**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INNA KHODORKOVSKAYA : <br> Palladium House 1-4 : <br> Argyll Street W1F 7LD : <br> London : <br> United Kingdom : <br>   : <br>   Plaintiff, : <br>   : <br> JACQUELYN G. GAY : <br> 640 Washington Street #3J : <br> New York, New York 10014-2859 : <br>   : <br> KENNETH K. LIN : <br> 23293 Sunset Crossing Rd : <br> Diamond Bar, California 91765-1451 : <br>   : <br>   Defendants. : | No: <br> <br> JUDGE: <br> <br> CIVIL ACTION – LAW <br> <br> **JURY TRIAL DEMANDED** |

## COMPLAINT

**AND NOW**, comes Plaintiff Inna Khodorkovskaya ("Ms. Khodorkovskaya"), by and through undersigned counsel, and for her Complaint against Defendants, Jacquelyn G. Gay and Kenneth K. Lin (collectively "Defendants"), states as follows:

## INTRODUCTION

1. Since at least 2003, the Russian government and its President have engaged in an organized disinformation campaign targeting Ms. Khodorkovskaya's husband, Mikhail Khodorkovskii ("Mr. Khodorkovskii"), in order to destroy his reputation and eliminate him as a political opponent in order to undermine democracy and human rights in the Russian Federation and protect the President of Russia Vladimir Putin's corrupt regime. The Defendants' depiction of Ms. Khodorkovskaya as a prostitute and a murderer and Mr. Khodorkovskii as corrupt and a murderer in "Kleptocracy" are not only false but also part of this long-standing disinformation

campaign orchestrated by the Kremlin.  This campaign, and the Defendants' involvement in it, are explained in greater detail below.

2. Even before his wrongful arrest and incarceration, Mr. Khordorkovskii had become a leading voice in the Russian Federation supporting democracy and human rights and crusading against corruption in the Russian government.  Putin saw Mr. Khordorkovskii's pro-democracy and human rights campaign as a threat to his regime.  Putin also saw Mr. Khordorkovskii's anti-corruption crusade as a threat to his regime and his friends and supporters.

3. Putin launched a personal vendetta against Mr. Khodorkovskii which has led Russian authorities to bankrupt his business, evaporate most of his wealth, wrongfully incarcerate him for ten years, force him and his family into exile, and seek his prosecution for a violent crime he did not commit—solely for the purpose of silencing Putin's biggest critic.

4. The Defendants, Jacquelyn G. Gray and Kenneth K. Lin have become an integral part of the efforts of the Russian government to malign Mr. Khodorkovskii.  In furtherance of the Kremlin's scheme to falsely discredit Mr. Khordorkovskii, Defendants have written and produced a highly inaccurate and offense play that sacrifices the truth to support the Kremlin's agenda.

5. Not content to falsely malign Mr. Khordorkovskii, the Defendants take aim at his wife, Inna Khodorkovskaya, by falsely portraying her to be a prostitute and a murderer.

6. This action is brought to restore Ms. Khodorkovskaya's good name and expose the false and malicious campaign being conducted by the Russian government and the Defendants.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Plaintiff and each Defendant are citizens of different states and the amount in controversy exceeds $75,000.

8. The venue for this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in the District of Columbia.

**PARTIES**

9. Plaintiff, Inna Khodorkovskaya, is an adult individual currently residing in London, United Kingdom. Ms. Khodorkovskaya is a private citizen who has not sought public office or publicity. She is not a "public figure."

10. Defendant, Jacquelyn G. Gay, is an adult individual currently residing at 640 Washington Street #3J, New York, New York 10014-2859. Defendant Gay is the director of the play "Kleptocracy."

11. Defendant, Kenneth K. Lin, is an adult individual currently residing at 23293 Sunset Crossing Road, Diamond Bar, California 91765-1451. Defendant Lin is the playwright of the play "Kleptocracy."

**BACKGROUND**

**I.     The Relationship between Vladimir Putin and Mikhail Khodorkovskii**

12. Ms. Khodorkovskaya's husband, Mr. Khodorkovskii is a public figure, businessman and philanthropist, who was the head of the Russian oil company Yukos from 1996 until his arrest in 2003.

13. Russian president Vladimir Putin and Mr. Khodorkovskii have been political opponents for decades, with Mr. Khodorkovskii financing political parties that opposed Putin.

14. Mr. Khodorkovskii sought to promote democracy and fight corruption within the Russian Federation. He became a strong critic of Putin's undemocratic policies. Mr. Khodorkovskii also became a tireless campaigner against corruption in the Kremlin.

15. Putin became president of the Russian Federation in 2000; the Russian government's persecution of Mr. Khodorkovskii began at that time.

16. In or about October 2003, Putin's government took action against Yukos and Mr. Khodorkovskii by arresting Mr. Khodorkovskii at gunpoint, charging him with fraud, and freezing shares of Yukos, which led to the collapse of the company's share price. In or about May 2005, in a trial where the result was pre-ordained and devoid of evidence, Mr. Khodorkovskii was convicted and sentenced to nine years imprisonment, and in or about December 2010, the Kremlin brought a new set of charges against Mr. Khodorkovskii to further extend his prison term. Thereafter, in another "trial" completely devoid of evidence and which did not meet minimal standards of due process, Mr. Khodorkovskii was found guilty of embezzlement and money laundering.

17. In 2011, Amnesty International declared Mr. Khodorkovskii a Prisoner of Conscience and organized online petitions calling for his unconditional release. Furthermore, Amnesty International's Director for Europe and Central Asia, Nicola Duckworth, stated that Mr. Khodorkovskii's second trial "was deeply flawed and politically motivated."

18. Mr. Khodorkovskii made four applications to the European Court of Human Rights ("ECtHR") with regard to his arrest, detention, and trial.

19. In 2011, the ECtHR rendered its judgment with regard to Mr. Khodorkovskii's first application. The ECtHR ruled that the Russian government violated Mr. Khodorkovskii's fundamental human rights in connection with his arrest and detention between 2003 and 2005.

20.     In 2013, the ECtHR ruled that Mr. Khodorkovskii's second application concerning the fairness of his trial was valid.  Specifically, Mr. Khodorkovskii complained that the presiding judge was biased, that the presumption of innocence was breached, that he was not granted adequate time or facilities to prepare his defense, and that the proceedings against him were politically motivated.  Three months later, the ECtHR ruling was finalized and accepted by the Russian Ministry of Justice.

21.     The ECtHR has not yet entered a ruling on Mr. Khodorkovskii's third and fourth applications to the ECtHR with regard to his inhumane treatment in Siberian detention facilities beginning in 2005, and the second trial.

22.     After former German Federal Minister of Foreign Affairs and Vice Chancellor Hans Dietrich Genscher negotiated his release, Putin pardoned Mr. Khodorkovskii, releasing him from jail in or about December 2013.

23.     Upon release, Mr. Khodorkovskii was convoyed to Germany from where he then moved to Switzerland.  In 2016, Mr. Khodorkovskii was granted political asylum in the United Kingdom and he moved to London.

24.     On June 26, 1998, a Siberian mayor, Vladimir Petukhov and his bodyguard were shot.  Mr. Petukhov died of his injuries, and the bodyguard sustained critical injuries.

25.     Following the shooting, witnesses described the assailants, and Russian police opened an investigation.  The investigation revealed that Mr. Petukhov had conflicts with a variety of groups, including violent organized crime groups.  According to the testimony of the former prosecutor of the region, Mr. Belan, the assailants were arrested but, for unknown reasons, were released.

26. Many years later, in 2005, Alexey Pichugin, a former manager in the security department at Yukos, and Leonid Nevzlin, a former Yukos executive, were charged with the murder of the mayor and the shooting of the bodyguard. The charges were announced by the Russian prosecutor while Mr. Nevzlin was in the United States at the invitation of Congress to testify about the abuses of Russian President Putin and his campaign against Yukos and those associated with Yukos.

27. Russian authorities sought the extradition of Mr. Nevzlin from the United States, but the United States declined their request.

28. The investigation by Russian authorities did not yield evidence of Mr. Pichugin or Mr. Nevzlin's guilt. The prosecution was based solely upon the confessions of individuals already in Russian prisons who, for some reason, suddenly confessed having shot Mr. Petukhov and his bodyguard.

29. These individuals did not match the descriptions of the shooters given by witnesses to the crime. In addition, these individuals did not claim to know or to have ever met Mr. Pichugin or Mr. Nevzlin. Instead, they contended, at least initially, that they had been hired by a third-party to commit the crime. The third-party allegedly told them that, ultimately, Yukos was behind the crime and, in particular, Mr. Pichugin and Mr. Nevzlin.

30. No physical or other direct evidence linking either Mr. Pichugin or Mr. Nevzlin to the incident was produced.

31. No physical or other direct evidence has ever been produced linking Ms. Khodorkovskaya or Mr. Khordorkovskii to the incident.

32. Later, during Mr. Nevzlin's in absentia trial, each of these individuals recanted their testimony and testified that investigators had told them to name Mr. Pichugin and Mr.

6

Nevzlin. These individuals claimed they have never heard of Mr. Pichugin or Mr. Nevzlin before investigators provided them with the names.

33.     Despite knowing the falsity of this testimony, the Russian Deputy Prosecutor gave an interview in which he stated Mr. Pichugin's guilt as fact, thereby tainting the jury pool and violating the presumption of innocence.

34.     On June 6, 2017, the ECtHR found that Mr. Pichugin's trial violated his human rights and directed that Mr. Pichugin be given a new trial. Russian authorities, however, have refused to abide by the ECtHR's judgments and continue to hold Mr. Pichugin in prison.

35.     The international human rights organization "Memorial," the Lantos Foundation for Human Rights and the Raoul Wallenberg Centre for Human Rights have all recognized Mr. Pichugin as a political prisoner. During the Geneva Summit for Human Rights and Democracy in 2018, Mr. Pichugin was recognized as the longest serving political prisoner in Russia.

36.     On April 24, 2017, before the Parliamentary Assembly for the Council of Europe, the appointed Rapporteur from the PACE Committee on Legal Affairs and Human Rights identified Mr. Pichugin's treatment by Russian authorities as "tantamount to moral torture."

37.     Mr. Nevzlin, an Israeli citizen, who was in Israel at the time, was tried in absentia in Russia in or about 2008, and found guilty of several counts of conspiracy to murder the mayor and sentenced to life imprisonment. Israel's Supreme Court, however, found there was no evidence directly connecting Mr. Nevzlin to the criminal allegations made against him and affirmed the Israeli attorney general's decision to reject Russia's extradition request.

38.     In or about 2007, Yukos shareholders, seeking compensation, commenced an arbitration against the Russian government, alleging that the government unlawfully forced the company into bankruptcy and deprived Yukos of its possessions through bogus taxes and the

auction of its main assets. The Permanent Court of Arbitration in The Hague ruled unanimously for the shareholders, finding that the Russian authorities had conducted a ruthless campaign to destroy Yukos, appropriate its assets and eliminate Mr. Khodorkovskii as a political opponent. The Permanent Court of Arbitration ordered the Russian government to repay the Yukos shareholders roughly $50 billion.

39. In a separate case brought on behalf of the former Yukos shareholders, the ECtHR further ruled that the Russian government pay nearly $2 billion to Yukos shareholders.

40. Upon Mr. Khodorkovskii's release from jail, he continued to criticize the Russian government, and in particular, Putin's policies.

41. In or about September 2014, Mr. Khodorkovskii officially relaunched the Open Russia movement—an initiative which advocates for democracy and human rights in Russia and is one of Putin's most outspoken critics. The initiative specifically intends to promote independent media, political education, rule of law, support for activists and journalists, free and fair elections, and a program to reform law enforcement and the Russian judicial system. In 2017, the Kremlin has declared Mr. Khodorkovskii's movement to be undesirable and blocked his organization's media platforms in the Russian Federation as a threat to national security.

42. In or about December 2015, the Ministry of Internal Affairs of Russia requested Interpol to issue a warrant for Mr. Khodorkovskii's arrest. The government then charged Mr. Khodorkovskii with ordering the murder of the mayor and armed police raided the Moscow offices of the Open Russia initiative. Interpol refused to issue the requested arrest warrant due to political motivations behind the charges against Mr. Khodorkovskii.

43. In addition to political animus, the Ministry of Internal Affairs was motivated by a desire to undermine the efforts of former Yukos shareholders to enforce the $50 billion arbitration award.

44. These more recent actions by the government of the Russian Federation are an obvious attempt to discredit Mr. Khodorkovskii through lies and the corrupt use of Russian state institutions, as documented by multiple international sources.

45. Upon information and belief, Mr. Khodorkovskii had angered the Kremlin with critical statements in the months leading up to the charges.

## II. The Play "Kleptocracy"

46. "Kleptocracy" was written by Defendant Kenneth K. Lin who, it is believed, knowingly used false Russian propaganda sources to portray a narrative of Ms. Khodorkovskaya in a false light by portraying her as a prostitute and a murderer, both of which are false. These actions were taken in order to support the Russian government's efforts to discredit Mr. Khodorkovskii and weaken his efforts to bring democracy and human rights to Russia and to eliminate corruption within the government.

47. The play was directed by Defendant Jacquelyn G. Gay who used her creative skills to portray Ms. Khodorkovskaya in a false light by portraying her as a prostitute and a murderer, both of which are false. These actions were taken in order to support the Russian government's efforts to discredit Mr. Khodorkovskii and weaken his efforts to bring democracy and human rights to Russia and to eliminate corruption within the Russian government.

48. Both Defendants either knew that their portrayal of Ms. Khodorkovskaya placed her in a false light or acted with a reckless disregard for the truth of their portrayal.

49. On January 18, 2019, the play "Kleptocracy" premiered at the Arena Stage theatre, in Washington, D.C., was open to the public from January 18 and was scheduled to run until February 24, 2019.

50. The play purports to show a power struggle between Vladimir Putin, who is portrayed as a counter-force, and the "oligarchs" who had stolen Russia's wealth.

51. Putin's primary antagonist is portrayed as Mr. Khodorkovskii, who is falsely portrayed as being involved in various illegal acts, including the murder of Vladimir Petukhov. Specifically, the play portrays Mr. Petukhov being shot in the head by unidentified gunmen. As the murder takes place, Mr. Khodorkovskii and Ms. Khodorkovskaya are portrayed as being in close proximity. Mr. Khodorkovskii is portrayed as being covered with Mr. Petukhov's blood and as exorcising his purported guilt with a Pontius Pilate-like washing of his hands.

52. The play begins with a scene portraying Ms. Khodorkovskaya as a prostitute.

53. The Defendants then, throughout the play, portray Ms. Khodorkovskaya as a "partner" in the alleged crimes of her husband.

54. Specifically, the Defendants portray Ms. Khodorkovskaya as encouraging the murder of Mr. Petukhov, telling her husband to "do what you need to do" and that the murder was "good for them," or words to that effect.

55. Following the execution of Mr. Petukhov, the Defendants refer to Mr. Khodorkovskii's involvement in the murder as "speculative," but that it was not "hard math" to come to that conclusion, or words to that effect.

56. In fact, neither Mr. Khodorkovskii nor Ms. Khodorkovskaya had any involvement in the murder of Mr. Petukhov, have never been charged with that murder and have never been connected to it by anyone unassociated with the Kremlin/Putin propaganda.

57. Furthermore, had the Defendants conducted even a cursory internet search, they would have known that their portrayal of Ms. Khodorkovskaya was false. The attempts by the Russian government to destroy the reputation of Mr. Khodorkovskii were well known and well documented and had to have been known by Defendants.

58. Despite knowledge of the falsity of "Kleptocracy," Defendants nevertheless produced and published the play.

59. It is believed and, therefore averred, that thousands of people have seen the play "Kleptocracy."

## COUNT I
### Invasion of Privacy False Light
### Jacquelyn G. Gay and Kenneth K. Lin

60. Paragraphs 1 through 59 are incorporated herein by reference as if fully restated.

61. Defendants, either knowingly, recklessly or unwittingly, have become accomplices in Putin and the Kremlin's plan to malign and discredit the pro-democracy and anti-corruption opponents of the Putin regime.

62. Defendants knowingly made false statements, representations, or imputations about Plaintiff by insinuating that she was a prostitute.

63. Defendants knowingly made false statements, representations, or imputations about Plaintiff by insinuating that she was involved in the murder of Mayor Vladimir Petukhov.

64. Defendants' representations were made public and were reasonably understood to be of or concerning Plaintiff.

65. Defendants' representations about Plaintiff, referring to her as a prostitute and a murderer, placed Plaintiff in a false light that would be offensive to a reasonable person.

66. As a direct and proximate result of Defendants' representations, Plaintiff has suffered pecuniary damage, as well as injury to reputation, impairment to standing in the community, personal humiliation, pain and suffering, and emotional distress.

WHEREFORE, Plaintiff Inna Khodorkovskaya demands judgment in her favor and against the Defendants, Jacquelyn G. Gay and Kenneth K. Lin.

## COUNT II
### Intentional Infliction of Emotional Distress
### Jacquelyn G. Gay and Kenneth K. Lin

67. Paragraphs 1 through 66 are incorporated herein by reference as if fully restated.

68. Defendants engaged in extreme and outrageous conduct by representing Plaintiff as a prostitute and a murderer in their play.

69. Defendants intentionally and knowingly represented Plaintiff as a prostitute and a murderer.

70. Defendants' extreme and outrageous conduct directly caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff Inna Khodorkovskaya demands judgment in her favor and against the Defendants, Jacquelyn G. Gay and Kenneth K. Lin.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Inna Khodorkovskaya respectfully requests judgment as follows:

    A.    That this Court award nominal and compensatory damages to the Plaintiff in an amount greater than $75,000;

    B.    That this Court award punitive damages to the Plaintiff; and,

    C.    Any other action which this Court deems appropriate.

Dated: March 22, 2019

Respectfully Submitted,

*/s/Dennis E. Boyle*
C. Allen Foster (DCBN 433614)
Dennis E. Boyle (DCBN 1017256)
Erik D. Bolog (DCBN 433614)
Whiteford, Taylor & Preston L.L.P.
1800 M Street N.W., Suite 450 N
Washington, D.C. 20036
Phone: (202) 659-6800
Fax: (202) 331-0573
cafoster@wtplaw.com
dboyle@wtplaw.com
ebolog@wtplaw.com

*Counsel for Plaintiffs*